1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

MICHAEL PALMA,

Civil No.        11-1684 MMA (PCL)

11

Petitioner,

12

vs.

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

13

14

MATTHEW CATE, Secretary,

15

Respondent.

16    **I.      INTRODUCTION**

17         Petitioner Michael Palma, a state prisoner proceeding pro se, has filed a Petition for Writ of

18    Habeas Corpus (Pet.) pursuant to 28 U.S.C. § 2254, challenging his convictions in San Diego County

19    Superior Court case number SCD209562 for three counts of assault with a semi-automatic firearm, one

20    count of assault by means likely to produce great bodily injury, and various gang allegations.  (Pet. at

21    6-37[1], ECF No. 1; Lodgment No. 1, vol. 2 at 0277-80.)  Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ.

22    P. 73, the parties have consented to Magistrate Judge jurisdiction in this case.  (*See* ECF No. 7.)  For

23    the reasons set forth below, the Court **DENIES** the Petition.

24    / / /

25    / / /

26    / / /

27

28         [1]  For ease of reference, the Court will use the page numbers assigned by the Court's electronic filing system.

-1-                                           11cv1684

## II.     FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The following statement of facts is taken from the California Court of Appeal's opinion denying Palma's direct appeal of his convictions.

> On September 2, 2007, Palma and several others, including at least one female, walked by Gabriel Ruiz Martinez's house in East San Diego (Martinez house) [referred to as "group A"]. Palma at the time was a documented member of the FMK criminal street gang. The Martinez house is located in territory that was claimed by FMK. Martinez's cousins, Anthony Nevarez (Anthony) and Jesus Nevarez (Jesus), were seated on the front steps of the house with their uncle, Ulysses Figueroa. Francisco Estrada was in front of the house sitting on the tailgate of his truck [referred to as "group B"].
>
> There are divergent accounts of what happened between group A and either Anthony or Jesus, but fighting words were exchanged. A short time later, Palma and between 15 and 30 individuals [referred to as "group C"] approached the Martinez house in order to engage the occupants in a fight. Several of the members of group C carried weapons, including rocks, sticks, a baseball bat, a metal pole and hammer. Palma challenged Jesus to a one-on-one fist fight. Someone from group C yelled "FM" or "FMK." Someone else from group C asked words to the effect "where you from" and stated something about crossing out FMK graffiti.
>
> At some point, Anthony ran inside and asked Martinez to come outside; Martinez did so. Once Anthony returned outside, a female from group C approached him and accused Anthony of "messing" with her nephew. The female started to slap Anthony. He defended himself by pushing her away. Group C, including Palma, then attacked group B. During the fight, Jorge Luis Guerrero, another documented FMK gang member, emerged from a nearby alley and yelled something about "messing with his homeys." Guerrero drew a handgun, fired at members of group B, and injured four people: Jesus, Anthony, Martinez and a neighbor of Martinez, Jonathan Arreguin.

(Lodgment No. 6 at 3-4.)

## III.     PROCEDURAL BACKGROUND

On August 4, 2008, the San Diego County District Attorney filed an amended information charging Michael Palma with three counts of assault with a deadly weapon, a violation of California Penal Code (Penal Code) § 245(b) (counts one through three), and one count of assault by means likely to create great bodily injury, a violation of Penal Code § 245(a)(1) (count four). (Lodgment No. 1, vol. 1 at 0005-07.) As to each count, the amended information alleged the crime was committed for the benefit of, at the direction of, and in association with, a criminal street gang with the specific intent to

1  promote, further, and assist in criminal activity by gang members, within the meaning of Penal Code

2  § 186.22(b)(1).  (*Id.*)

3      On August 15, 2009, a jury convicted Palma of all charges and found all the gang allegations to

4  be true.  (Lodgment No. 1, vol. 2 at 0277-80.)  He was sentenced to eleven years in state prison.  (*Id.* at

5  0282.)

6      Palma appealed his conviction to the California Court of Appeal for the Fourth Appellate

7  District, Division One.  (Lodgment Nos. 3-5.)  The state appellate court affirmed his conviction in a

8  written opinion filed March 23, 2010.  (Lodgment No. 6.)  Palma then filed a Petition for Review in the

9  California Supreme Court.  (Lodgment No. 7.)  The California Supreme Court denied the petition

10 "without prejudice to any relief to which defendant might be entitled after this court decides *People v.*

11 *Durango*, S176886, *People v. Gutierrez*, S176620, *People v. Lopez*, S177046, and/or *People v.*

12 *Rutterschmidt*, S176213."  (Lodgment No. 8.)[2]

13     Palma filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this Court on

14 July 22, 2011.  (ECF No. 1.)  Respondent filed an Answer and Memorandum of Points and Authorities

15 in Support of the Answer on October 17, 2011.  (ECF No. 8.)  Palma filed a Traverse on November 4,

16 2011.  (ECF No. 10.)

17 **IV.    DISCUSSION**

18     A.    Standard of Review

19     This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act

20 of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  Under AEDPA, a habeas petition will

21 not be granted with respect to any claim adjudicated on the merits by the state court unless that

22 adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of

23 clearly established federal law; or (2) resulted in a decision that was based on an unreasonable

24 determination of the facts in light of the evidence presented at the state court proceeding.  28 U.S.C.

26     [2] In these series of cases, the California Supreme Court is considering the application of *Melendez-Diaz*
27 *v. Massachusetts*, 557 U.S. 305 (2009) and *Bullcoming v. New Mexico*, – U.S. – , 131 S. Ct. 2705 (2011) to
*People v. Geier*, 41 Cal. 4th 555 (2007), which held that testimony by an expert about the contents of a forensic
28 report by an expert who did not conduct the testing is not "testimonial" under the Supreme Court's decision in
*Crawford v. Washington*, 541 U.S. 36 (2004).  The California Supreme Court has granted review in these cases
but as of the date of this Order, has not rendered a decision.

11cv1684

§ 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *See Early*, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.* Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

/ / /

B.      Analysis

Palma presents four claims in his petition.  First, Palma contends he was denied his federal due process rights when the trial court refused to bifurcate the substantive criminal charges from the gang allegations.  (Pet. at 6-14, ECF No. 1; Traverse at 8-11, ECF No. 10.)  Second, Palma argues the gang expert improperly testified as to Palma's subjective knowledge and intent.  (Pet. at 15-20, ECF No. 1; Traverse at 11-12, ECF No. 10.)  Third, Palma alleges his Sixth Amendment Confrontation Clause rights were violated by the gang expert's use of hearsay.  (Pet. at 21-29, ECF No.1; Traverse at 12-14, ECF No. 10.)  Finally, Palma contends the prosecutor improperly commented on his failure to testify, in violation of his Fifth Amendment rights, as delineated in *Griffin v. California*, 380 U.S. 609 (1965).  (Pet. at 30-37, ECF No.1; Traverse at 14-15, ECF No. 10.)  As to each of these claims, Respondent contends the state court's adjudication was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Mem. of P. & A. Supp. Answer at 7-24, ECF No. 8.)  As to claims one, two and three, Respondent also contends Palma has failed to state a federal question.  (*Id.*)

1. *Bifurcation of Gang Enhancements From the Substantive Charges*

Palma contends the trial judge violated his federal due process right to a fair trial when he refused to bifurcate the gang allegations from the substantive criminal charges.  (Pet. at 6-14, ECF No. 1; Traverse at 8-11, ECF No. 10.)  Palma argues this unfairly prejudiced him in front of the jury because its purpose was to show he had a criminal disposition and acted in accordance with that disposition by committing the substantive criminal offenses.  (Pet. at 8-14, ECF No. 1.)  Respondent first argues Palma is not entitled to relief because his claim involves only the application of state evidentiary law, which is not cognizable on federal habeas review.  (Mem. of P. & A. Supp. Answer at 7, ECF No. 8.)  In the alternative, Respondent argues the state court's resolution of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (*Id.* at 7-19.)

Palma raised this claim in the Petition for Review he filed in the California Supreme Court.  (*See* Lodgment No.7.)  As noted about, the California Supreme Court summarily denied the petition without prejudice to any relief Palma may be entitled to once *People v. Dungo*, *People v. Gutierrez*, *People v. Lopez*, and *People v. Rutterschmidt* are decided.  Accordingly, this Court must "look through" to the / / /

1    state appellate court's decision denying the claim as the basis for its opinion.  *Ylst*, 501 U.S. at 805-06.

2    The state appellate court wrote:

3         [W]hen a trial court properly denies a motion to bifurcate [under California law],
          if the failure to bifurcate actually results in gross unfairness so as to deprive the
4         defendant of a fair trial or due process of law, then reversal is required.  (*People v.
          Johnson* (1988) 47 Cal.4th 743, 752-754; see also *People v. Arias* (1996) 13 Cal.4th 92,
5         127 (*Arias*) [reconfirming the rule in *People v. Johnson*, *supra*, 47 Cal.3d at p. 590].)
          Palma contends he suffered such gross unfairness.  We disagree.

6
          To determine whether gross unfairness has occurred, we examine four factors:
7         (1) the cross-admissibility of the evidence in bifurcated trials; (2) whether some of the
          charges are likely to unusually inflame the jury against the defendant; (3) whether a
8         weak  case has been joined with a strong case or another weak case so that the total
          evidence may alter the outcome of the some or all of the charges; and (4) whether one
9         of the charges is a capital offense, or the joinder of the charges converts the matter into
          a capital case.  (*People v. Mendoza* (2000) 24 Cal.4th 130, 161 (*Mendoza*).)

10
          The first factor is whether gang evidence was cross-admissible.  As discussed
11        *ante*, the circumstances of the fight and eventual shooting involved facts relating to the
          activity and mentality of criminal street gangs.  This same activity and mentality was
12        conjoined with Palma's motive and intent.

13        For example, the prosecutor asked Detective John Harberth, the People's gang
          expert, about one of the phrases someone shouted during the fight "where you from?"
14        Harberth explained: "In a gang case, whenever someone asks where are you from, it's
          usually a precursor to violence . . . [b]ecause there is no right answer to that question."
15        This question simultaneously proves the gang enhancement and shows that Palma, a
          gang member, was at the residence with the knowledge and intent that violence might
16        ensue.  Thus, even in a bifurcated trial, a significant amount of gang evidence would
          have been cross-admissible.

17
          The only evidence that would have been exclusive to the gang allegation was
18        proof of predicate gang acts. [footnote omitted.]  The predicate gang acts included an
          assault, a robbery, a felon carrying a firearm and a stabbing.  These are all crimes of a
19        less-serious nature than the crime for which Palma was eventually convicted.  Although
          Harberth also noted the FMK street gang had been involved in an attempted homicide
20        as well as a kidnapping, those predicate acts were not offered to prove the gang
          enhancement, and thus the inflammatory nature of those crimes were kept from the jury.
21        We conclude that even if predicate acts evidence was prejudicial to Palma, it was also
          highly probative and withstands an Evidence Code 352 analysis.

22
          The second *Mendoza* factor — the risk joined allegations will unfairly inflame
23        the jury — was also not present.  Palma was charged with four counts of assault under
          section 245. [footnote omitted.]  Because all of the charges were similar and were more
24        serious than the predicate acts used to prove the enhancement, it is unlikely the gang
          allegation inflamed the jury against Palma.

25
          In *Arias* the defendant was charged with murder in one count and rape in another
26        count.  The crime occurred on two separate dates and involved two separate victims.
          (*Arias*, *supra*, 13 Cal.4th at p. 127.)  Despite the danger the jury would use evidence of
27        the rape to convict for the murder, the trial was not bifurcated.  (*Id.* at p. 121.)  Our
          Supreme Court held the failure to sever the charges did not result in gross unfairness

28

because the evidence from each of the charges was so strong it was unlikely the jury convicted based on evidence from a different crime. (*Id.* at p. 130.)

Here, the charges are not nearly as polarizing as they were in *Arias*; all the substantive charges involved assault, and each of the assaults occurred on the same date. Though there were separate victims, three of the four victims were from group B opposing Palma's group C. [footnote 9: The fourth victim was a neighbor, Jonathan Arreguin.] Furthermore, the enhancement allegation was closely connected to the substantive charges. (See *People v. Hernandez*, *supra*, 33 Cal.4th at p. 1048.) Thus, we conclude there was little risk the jury was unduly inflamed by the joinder.

As to the third *Mendoza* factor, here a weak case was not joined with a strong case or another weak case so that the total evidence altered the outcome of some or all of the charges. Again, a comparison to *Arias* is apt.

In *Arias* the prosecution had very strong evidence the defendant had committed a rape (among other charges); the prosecution had strong, but less evidence he had committed murder. (See *Arias*, *supra*, 13 Cal.4th at pp. 128-130.) Before trial, the defendant in Arias wanted to plead guilty to rape, but wanted to challenge the prosecution on the murder charged based on a lack of intent theory. The defendant argued that powerful evidence from the rape joined with circumstantial evidence from the murder would encourage the jury to convict for the murder based on evidence from the rape. (*Id.* at pp. 129-120.) The trial court disagreed, and the Supreme Court affirmed. (*Id.* at p. 130.)

In so doing, our Supreme Court reasoned the murder evidence was independently strong enough to support a conviction. It also reasoned the cross-admissibility of evidence dispelled any chance the rape evidence tipped the balance for the murder conviction. (*Arias*, *supra*, 13 Cal.4th at pp. 129-130.)

Here, unlike *Arias*, the charges all arise from one set of facts. The gang issues in this case were, as the trial court found, "tightly wound" into the underlying crime. Moreover, a reasonable jury, considering the facts of this case, would necessarily see the implication of gang involvement. Finally, independent of the gang enhancement, the evidence from the substantive crime was strong enough to support a conviction. We thus conclude the third *Mendoza* factor also does not favor Palma. [footnote omitted.]

Palma, however, relies on *People v. Albarran* (2007) 149 Cal.App.4th 214 to support his contention gang evidence should not be admitted at trial where its sole relevance is to show a defendant's criminal disposition or bad character as a means of creating an inference the defendant committed the crime. Although we agree with the holding in *Albarran*, the evidence here was offered for no such purpose. Rather, the gang evidence highlighted the pack mentality of gangs and went directly to the question of Palma's motive and intent. *People v. Albarran* is thus inapposite here.

In sum, none of the *Mendoza* factors support Palma's argument. Thus, the court's denial of bifurcation did not result in any gross unfairness to Palma.

(Lodgment No. 6 at 6-10.)[3]

///

---

[3] To the extent Palma is arguing that the state court improperly denied severance under California law, he is not entitled to relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas relief is not available for violations of state law); *see also* 28 U.S.C. § 2254(a).

1    In *Davis v. Woodford*, 384 F.3d 628 (9th Cir. 2004), the Ninth Circuit discussed the

2  circumstances under which improper joinder violates a defendant's federal due process rights as follows:

3             We may grant habeas relief on a joinder challenge only "if the joinder results in
          an unfair trial.  There is no prejudicial constitutional violation unless 'simultaneous trial
4         of more than one offense . . . actually render[ed] petitioner's state trial fundamentally
          unfair and hence, violative of due process.'" *Sandoval v. Calderon*, 241 F.3d 765, 771-
5         772 (9th Cir.2001), *cert denied*, 534 U.S. 847, 122 S.Ct. 112, 151 L.Ed.2d 69 (2001) and
          *cert denied*, 534 U.S. 943, 122 S.Ct. 322, 151 L.Ed.2d 241 (2001) (quoting *Featherstone
6         v. Estelle*, 948 F.2d 1497, 1503 (9th Cir.1991) (omissions and modifications in original).
          The requisite level of prejudice is reached only "if the impermissible joinder had a
7         substantial and injurious effect or influence in determining the jury's verdict." *Sandoval
          v. Calderon*, 241 F.3d 765, 771-72 (9th Cir. 2001) (citing *Bean v. Calderon*, 163 F.2d
8         1073, 1086 (9th Cir. 1998)).  In evaluating prejudice, the Ninth Circuit focuses
          particularly on cross-admissibility of evidence and the danger of "spillover" from one
9         charge to another, especially where one charge or set of charges is weaker than another.
          *See e.g., Sandoval*, 241 F.3d at 772; *Bean*, 163 F.3d at 1084.

10

11  *Id.* at 638.

12    Cross-admissibility of evidence and the joinder of a weak evidentiary case with a strong one is

13  of particular concern, because it makes it "difficult for a jury to compartmentalize the damaging

14  information."  *Sandoval*, 241 F.3d at 772; *but see Hollie v. Hedgpeth*, 2011 WL 5142956 (9th Cir. Oct.

15  31, 2011) (stating that "[t]he Supreme Court has never held that a trial court's failure to provide separate

16  trials on different charges implicates a defendant's right to due process").[4]

17    California courts and the Ninth Circuit use the same factors to evaluate whether misjoinder

18  violates federal due process: cross-admissibility of the evidence, whether some of the charges are likely

19  to inflame the jury, and whether a weak case has been joined with a strong one or two weak cases have

20  been joined together so the strength of the evidence of all charges is enhanced.  *People v. Mendoza*, 24

21  Cal.4th 130, 161 (2000) (cited in the appellate court's opinion, Lodgment No. 6 at 6-7); *Davis*, 384 F.3d

22  at 638.  Accordingly, the state court's denial of the claim is not "contrary to" any principal of clearly

23  established Supreme Court *Featherstone*, *Park* and *Davis* purport to establish.  *See Williams*, 529 U.S.

24  at 412-13.

25  / / /

26  / / /

27

28      [4]  Pursuant to Ninth Circuit Rule 36-3(b), "[u]npublished dispositions and orders of this Court issued on
     or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1."

The state appellate court's denial of this claim is also not contrary to clearly established Supreme Court law. *Id.* In its opinion, the state court first analyzed whether any of the gang evidence would have been cross-admissible in separate trials. (Lodgment No. 6 at 7-8.) The state court concluded, and this Court agrees, that evidence of Palma's gang membership, the structure and culture of gangs, and why Palma, as a gang member, would have been aware that someone in the crowd confronting Jesus Nevarez would have had a gun, would have been cross-admissible in separate trials to prove motive and intent.

Evidence of the predicate acts needed to establish the gang allegations, however, as the state appellate court also correctly concluded, would not have been cross-admissible. (*Id.* at 7-8.) This evidence, therefore, could have had a "spillover effect." But, as the state appellate court also reasonably found, because much of the gang testimony would have been cross-admissible, the jury would have been made aware of a significant amount of gang testimony even if there had been separate trials, and any "spillover effect" was therefore minimal. (Lodgment No. 6 at 10.) Moreover, Palma contends the admission of the testimony supporting the gang allegations was "unnecessary" and that "excessive use of this inflammatory evidence clearly violated petitioner's right to due process of law under the federal constitution as interpreted by the United State Supreme Court in *Estelle v. McGuire* (1991) 502 U.S. 62 and *Spencer v. Texas* (1967) 385 U.S. 554." (Pet. at 12., ECF No. 1.) The Ninth Circuit, however, has stated that when a petitioner alleges misjoinder of counts had an inflammatory effect on the jury such that the jury's ability to determine guilt on separate counts was improperly influenced, a petitioner must show that the jury was *actually* inflamed. *See Park v. California*, 202 F.3d at 1150. Palma has made no such showing.

Joinder of the charges was also not improper because a weak case was not joined with a strong one or with another weak case to bolster the strength of both cases. The relative strength of the evidence supporting the substantive crimes and the gang allegations crimes was very similar because both sets of charges depended almost entirely on the credibility of Detective Harberth. Harberth's testimony provided the support for the prosecution's contention that Palma knew someone in the crowd who confronted Jesus Nevarez had a gun, because in gang culture, this is what is expected. (Lodgment No. 2, vol. 5 at 671-72.) This provided the support for the knowledge and intent elements of the substantive crimes. (*See* Lodgment No. 1, vol. 1 at 0138 [assault with a semi automatic

-9-

firearm requires the defendant to have willfully committed an act with a semiautomatic firearm with the knowledge that his action would lead to the application of force upon someone].)  Harberth's testimony about predicate acts and Palma's membership in FMK supported the prosecution's contention that FMK is a gang and the shooting was committed for the benefit of FMK.  (*Id*. at 657-92.)

Lastly, the jury was given the following limiting instruction regarding Harberth's testimony about the predicate gang acts:

> Detective John Harberth testified that in reaching his conclusions as an expert witness, he considered statements made by various witnesses in this case.  You may consider those statements only to evaluate the expert's opinion.  Do not consider those statements as proof that the information contained in the statements is true.

(Lodgment No. 1, vol. 2 at 0116.)

Thus, the jury was appropriately cautioned against considering the evidence of predicate crimes for the gang allegation as proof of the substantive criminal charges.  Jurors are presumed to follow the instructions they are given.  *See Fields v. Brown*, 503 F.3d 755, 782 (9th Cir. 2007), citing *Kansas v. March*, 548 U.S. 163, 179 (2006).

For all the foregoing reasons, the Court concludes the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13.  Palma is not entitled to relief as to this claim.

2. *Gang Expert's Testimony Regarding Palma's Intent and Knowledge*

Palma argues Detective Harberth improperly testified about an "ultimate fact" that was within the jury's province to decide, namely, whether Palma had the specific knowledge of the shooter's intent to use the gun to shoot the victims.  (Pet. at 15-20, ECF No. 1; Traverse at 11-12, ECF No. 10.) Specifically, Palma complains that Detective Harberth testified that when gang members show up together at a house or residence to confront someone, they know someone in the group is carrying a gun and is prepared to use it if necessary.  (*Id.*; Lodgment No. 2, vol. 5 at 672.)  Respondent contends this does not state a federal constitutional question because it is simply a matter of state evidentiary law. (Mem. of P. & A. Supp. Answer at 19–20, ECF No. 8.)  In the alternative, Respondent argues the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (*Id.* at 20-23.)

-10-

1    Palma raised this claim in the Petition for Review he filed in the California Supreme Court. (*See*

2  Lodgment No.7.)  As previously noted, the California Supreme Court summarily denied the petition

3  without prejudice to any relief Palma may be entitled to once *People v. Dungo*, *People v. Gutierrez*,

4  *People v. Lopez*, and *People v. Rutterschmidt* are decided.  Accordingly, this Court must "look through"

5  to the state appellate court's decision denying the claim as the basis for its opinion.  *Ylst*, 501 U.S. at

6  805-06.  The state appellate court denied the claim as follows:

7        Gang experts may testify regarding the culture and habits of criminal street
8        gangs.  [footnote omitted.] (*People v. Ward*, *supra*, 36 Cal.4th at p. 209; see also *People
         v. Killebrew* (2002) 103 Cal.App.4th 644 (*Killebrew*).)  This testimony may include
9        discussion of the size, composition or existence of a gang, an individual defendant's
         membership in or association with a gang, the primary activities of a specific gang,
10       motivation for a particular crime, whether and how a crime was committed to benefit or
         promote a gang, rivalries between gangs, gang-related tattoos, graffiti and hand signs and
         gang colors or attire.  (*Killebrew*, *supra*, 103 Cal.App.4th at pp.656-657.)

11
         With respect to culture and habits, gang experts may also testify to how a gang
12       may retaliate against a perceived wrong, how gangs may travel in large groups if
         expecting trouble, and how oftentimes gang members traveling together may know if one
13       of their group is armed.  (*Killebrew*, *supra*, 103 Cal.App.4th at p. 658.)  However, an
         expert may not testify as to the subjective knowledge and intent of an individual
14       defendant.  (See *id.* at p. 647 [expert went beyond culture and habit of gangs when he
         testified that individuals knew there was a gun and each of the individuals constructively
15       possessed the gun with every other person].)

16       Palma points out the prosecutor asked the expert on direct examination: "[D]o
         individuals in the group usually know who's got the gun . . . .?"  Palma argues that this
17       question went to his subjective intent and therefore usurped the jury's function.  We
         disagree.

18
         The record shows that before asking the above question, the prosecutor was
19       discussing a predicate act and not Palma.  During that predicate act, a group of several
         males approached and fought with a smaller group.  The larger group yelled out the gang
20       name and challenged the smaller group to a one-on-one fist fight.  The prosecutor then
         asked the expert if this is common for gangs in general.  The prosecutor and expert then
21       continued to discuss gangs in general and what gangs might expect in situations similar
         to the predicate act.  The expert stated gangs like to tilt the odds in their favor by
22       bringing unconventional weapons, and usually at lease one gang member will carry a
         gun, pushing the odds greatly in the gang's favor.  The only time Palma's case was
23       discussed in this exchange was when the expert drew the comparison that Palma's group,
         like the group from the predicate act, carried unconventional weapons.  By the time the
24       prosecutor asked the expert if individuals in the group would know about the gun, the
         questioning had returned to a discussion of gangs in general.

25
         Because the testimony was tied to gangs in general and not about Palma
26       specifically, the expert witness's testimony was not about Palma's subjective knowledge
         or intent.  In fact, *Killebrew* expressly approved of the type of expert testimony given
27       here regarding the fact that "gang members traveling together may know if one of the
         group is armed."  (*Killebrew*, *supra*, 103 Cal.App.4th at p. 658.)  Thus, the expert's

28

1    statement was not an improper opinion on an ultimate issue, and we conclude the trial
2    court did not abuse it's discretion in admitting the evidence.

3    (Lodgment No. 6 at 11-13.)[5]

4    Notably, Palma does not cite any United States Supreme Court or Ninth Circuit authority for the

5    proposition that the federal constitution is violated when a state court permits an expert to testify

6    regarding an ultimate fact that is within the province of the jury to resolve.  Indeed, as Respondent

7    points out, the Ninth Circuit has concluded that there is no clearly established Supreme Court law

8    supporting this contention.  In *Moses v. Payne*, 555 F.3d 742 (9th Cir. 2009), Petitioner objected to the

9    testimony of the medical examiner, a ballistics expert, and a social worker, all of whom testified that

10   the death of the victim was a homicide, on the ground that the question whether the death was the result

11   of homicide or suicide "improperly intruded on the province of the jury and thereby deprived [him] of

12   a fair trial."  *Id.* at 761.  The Ninth Circuit concluded Moses was not entitled to relief under 28 U.S.C.

13   § 2254 because there were no Supreme Court cases that "support[ed] the general proposition that the

14   Constitution is violated by the admission of expert testimony concerning an ultimate issue to be resolved

15   by the trier of fact."  *Id.*  As in *Moses*, because there is no such clearly established Supreme Court law,

16   this Court cannot conclude under AEDPA that the state court's denial of this claim was contrary to, or

17   an unreasonable application of, clearly established Supreme Court law.  *See Carey v. Musladin*, 549 U.S.

18   70, 76-77 (2006).  Thus, Palma is not entitled to relief as to this claim.  *Williams*, 529 U.S. at 412-13.

19        3.  *Expert's Use of Hearsay as the Basis For His Testimony*

20   In this third claim, Palma contends his Sixth Amendment rights, as defined in *Crawford v.*

21   *Washington*, 541 U.S. 36 (2004), were violated when the gang expert was permitted to testify to the

22   predicate acts used to prove the gang allegations based on hearsay from police reports prepared by

23   others and out-of-court statements.  (Pet. at 21-29, ECF No. 1; Traverse at 12-14, ECF No. 10.)

24   Respondent counters that the state court's denial of this claim was neither contrary to, nor an

25   u        n        r        e        a        s        o        n        a        b        l        e

26   application of, clearly established Supreme Court law.  (Mem. of P. & A. Supp. Answer at 16-27, ECF

27   No. 8.)

28

---

[5] To the extent Palma is claiming the state court improperly admitted Detective Harberth's testimony under state law, he is not entitled to relief.  *See Estelle*, 502 U.S. at 67-68; 28 U.S.C. § 2254 (a).

-12-                                                                11cv1684

/ / /

Palma raised this claim in the Petition for Review he filed in the California Supreme Court. (*See* Lodgment No. 7.) As previously noted, the California Supreme Court summarily denied the petition without prejudice as to any relief Palma may be entitled to once *People v. Dungo*, *People v. Gutierrez*, *People v. Lopez*, and *People v. Rutterschmidt* are decided. Accordingly, this Court must "look through" to the state appellate court's decision denying the claim as the basis for its opinion. *Ylst*, 501 U.S. at 805-06. The state appellate court, citing California law as well as the controlling United States Supreme Court law, *Crawford*, denied the claim as follows:

> The Sixth Amendment [footnote omitted] guarantees a defendant's right "to be confronted with the witnesses . . . ." (U.S. Const., Sixth Amend.) The United States Supreme Court has held that "out-of-court statements that are testimonial in nature are inadmissible unless the declarant is unavailable and the accused has had a prior opportunity to cross-examine the declarant." (*People v. Thomas* (2005) 130 Cal.App.4th 1202, 1208 (*Thomas*), citing *Crawford v. Washington* (2004) 541 U.S. 36, 68 [124 S. Ct. 1354] (*Crawford*).)

> However, "*Crawford* does not undermine the established rule that experts can testify to their opinions on relevant matters, and relate the information and sources upon which they rely in forming those opinions. This is so because an expert is subject to cross-examination about his or her opinions, and additionally, the materials on which the expert bases his or her opinion are not elicited for the truth of their contents; they are examined to assess the weight of the expert's opinion." ([*People* v.] *Thomas*, *supra*, 130 Cal.App.4th at p. 1210.) Moreover, *Crawford* itself explicitly states the confrontation clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." (*Crawford*, *supra*, 541 U.S. at p. 59, fn. 9.)

> Palma asks us to reconsider *Thomas* in light of the recent United States Supreme Court decisions of *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. ___ [129 S.Ct. 2527] (*Melendez-Diaz*) and *Briscoe v. Virginia* (Jan. 25, 2010, No. 07-11191) ___ U.S. ____ 2010 U.S. LEXIS 767. [footnote omitted.] We conclude *Melendez-Diaz* is inapposite to our analysis of this case and does not change our reasoning as stated in *Thomas*.

> In *Melendez-Diaz* prosecutors sought to introduce evidence of a "certificate of analysis" from scientists at the Massachusetts Department of Public Health that a substance seized from the defendant was cocaine. (*Melendez-Diaz*, *supra*, 557 U.S. ___ [129 S. Ct. p. 2531].) The defendant argued the confrontation clause required the prosecution to put the scientist who created the report on the witness stand to testify against him. (*Id.* at p. 2530.) The United States Supreme Court agreed, holding that the certificate was a "testimonial statement[], and the analysts were 'witnesses' for purposes of the Sixth Amendment. Absent a showing that the analysts were unavailable to testify at trial *and* petitioner had a prior opportunity to cross-examine them, petitioner was entitled to '"be confronted with"' the analysts at trial." (*Id.* at 2532.)

> *Melendez-Diaz* lends no support to Palma's contention here. The report in *Melendez-Diaz* was offered to prove the information contained in the report was true — that the substance tested was in fact cocaine. Here, Harberth's use of other officer's field interviews, which contained testimonial hearsay, was not offered to prove the truth of

1    the matter.  The field interviews were used by Harberth in forming his expert opinion.
2    Palma

3    had, and seized, the opportunity to cross-examine Harberth about how his opinion was
     formed, and his qualifications for forming such an opinion.  Thus, *Melendez-Diaz* does
4    not undermine *Thomas*, as Palma suggests, with respect to an expert's reliance on
     hearsay in forming his opinions.
5
6         Indeed, after *Melendez-Diaz*, experts may still testify to their opinions on relevant
     matters, and relate the information and sources — including hearsay sources — upon
7    which they rely in forming those opinions.  Experts are subject to cross-examination
     about their opinions and additionally, the materials on which the expert bases his or her
8    opinion are not elicited for the truth of their contents — they only go to the weight of the
     expert's opinion.  (*Thomas, supra*, 130 Cal.App.4th at p. 1210.)  Thus, we conclude
9    Harberth's testimony did not infringe upon Palma's Sixth Amendment right to confront
     the witnesses against him.

10   (Lodgment No. 6 at 14-16.)

11        The Supreme Court has not yet resolved the question whether expert testimony which is based

12   on inadmissible hearsay falls under *Crawford*'s prohibition against the admission of out-of-court

13   testimonial  statements which the defendant has not had the opportunity to cross-examine.  Indeed, the

14   Supreme Court recently granted certiorari on a similar issue.  *See People v. Williams*, 238 Ill.2d 125

15   (2010), *cert. granted*, *Williams v. Illinois*, 131 S. Ct. 3090 (June 28, 2011) (considering whether an

16   expert may testify about the substance of a DNA analysis report in which he took no part).  Thus, this

17   Court cannot conclude the state court's denial of the claim was contrary to, or an unreasonable

18   application of, clearly established Supreme Court law.  *See Musladin*, 549 U.S. at 76-77 (holding that

19   when there is no clearly established Supreme Court law,  a Court cannot conclude under AEDPA that

20   the state court's denial of this claim was contrary to, or an unreasonable application of, clearly

21   established Supreme Court law).

22        In addition, courts who have considered this question have concluded that *Crawford* does not

23   prohibit an expert from giving his or her expert opinion, even if that opinion is based on inadmissible

24   hearsay, so long as the expert is not merely parroting that hearsay.  As the court in *United States v.*

25   *Ramos-Gonzalez*, 664 F.3d 1, 5 (1st Cir. 2011) stated:

26        More specifically, the assessment is one of degree.  Where an expert witness
          employs her training and experience to forge an independent conclusion, albeit on the
27        basis of inadmissible evidence, the likelihood of a Sixth Amendment infraction is
          minimal. *See United States v. De La Cruz*, 514 F.3d 121, 134 (1st Cir. 2008) (holding
28        that the Confrontation Clause does not limit experts offering their own opinion
          regardless of the independent admissibility of the material relied upon); *see also*
          *Bullcoming*, 131 S.Ct. at 2722 (Sotomayor, J., concurring) ("[T]his is not a case in which

-14-

11cv1684

an expert witness was asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence."). Where an expert acts merely as a well-credentialed conduit for testimonial hearsay, however, the cases hold that her testimony violates a criminal defendant's right to confrontation. *See, e.g., United States v. Ayala*, 601 F.3d 256, 275 (4th Cir.2010) ("'[Where] the expert is, in essence, ... merely acting as a transmitter for testimonial hearsay," there is likely a *Crawford* violation); *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009) (same); *United States v. Lombardozzi*, 491 F.3d 61, 72 (2d Cir. 2007) ("[T]he admission of [the expert's] testimony was error ... if he communicated out-of-court testimonial statements ... directly to the jury in the guise of an expert opinion.").

*Id.* at 5; *see also United States v. Law*, 528 F.3d 888, 912 (D.C. Cir. 2008).[6]

In the present case, Detective Harberth did not simply repeat the testimonial hearsay contained in the reports and statements upon which he relied to conclude that FMK was a gang and that Palma committed the crimes of which he was accused for the benefit of FMK. Rather, he testified as to his expert opinion based on those reports. (*See* Lodgment No. 2, vol. 5 at 653-820, vol. 6 at 830-58.) Moreover, even if the Court were to find a Sixth Amendment occurred, such violations are subject to harmless error review under *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Here, the trial judge gave a limiting instruction during Harberth's testimony, telling the jury that Harberth would be "considering statements made by various witnesses in this case," and that the jury could consider those statements "only to evaluate Detective Harberth's opinion [and not] as proof that the information contained in the statements is true." (Lodgment No. 2, vol. 5 at 657.) They were also given a similar instruction during deliberations. (*See* Lodgment No. 1, vol. 1 at 0116.[7]) Juries are presumed to follow the instructions given to them. *See Fields*, 503 F.3d at 782.

For all the foregoing reasons, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13. Palma is not entitled to relief as to this claim.

---

[6] *See also Cruz v. Jacques*, 2012 WL 787604 at *11 (C.D. Cal. Feb. 10, 2012).

[7] Judicial Council of California Criminal Jury Instructions No. 360, "Statements to an Expert" as given to the jury, reads: "Detective John Harberth testified that in reaching his conclusions as an expert witness, he considered statements made by various witnesses in this case. You may consider those statements only to evaluate the expert's opinion. Do not consider those statements as proof that the information contained in the statements is true."

1

      4. *Prosecutorial Comment on Palma's Failure to Testify*

2

      Finally, Palma claims the prosecutor improperly commented on his failure to testify in his own

3

defense, as proscribed in *Griffin v. California*, 380 U.S. 609 (1965). (Pet. at 30-37, ECF No. 1; Traverse

4

at 14-15, ECF No. 10.) Respondent contends the state appellate court's denial of this claim was neither

5

contrary to, nor an unreasonable application of, clearly established Supreme Court law. (Mem. of P.

6

& A. Supp. Answer at 28-31, ECF No. 8.)

7

      Palma raised this claim in the Petition for Review he filed in the California Supreme Court. (*See*

8

Lodgment No. 7.) As previously noted, the California Supreme Court summarily denied the petition

9

without prejudice to any relief Palma may be entitled to once *People v. Dungo*, *People v. Gutierrez*,

10

*People v. Lopez*, and *People v. Rutterschmidt* are decided. Accordingly, this Court must "look through"

11

to the state appellate court's decision denying the claim as the basis for its opinion. *Ylst*, 501 U.S. at

12

805-06. The state appellate court denied the claim as follows:

13

      A defendant forfeits *Griffin* error when he or she fails to object to that error or

14

seek admonition in the trial court. (*People v. Lancaster* (2007) 41 Cal.4th 50, 84.) Palma neither objected to the prosecutor's comments during trial nor did he seek an

15

admonition for the jury. Thus, he failed to preserve the issue for appeal. [footnote omitted.]

16

      In any event, the prosecutor's statement was a fair comment on the state of the

17

evidence, rather than a comment on defendant's failure to provide personally an alternative explanation. (*People v. Turner* (2004) 34 Cal.4th 406, 420.) Palma's

18

argument focuses on the prosecutor's use of the word "know" in the present tense, rather than "knew" in the past tense. Palma believes that using phrases like "he knows it now"

19

and "come back and tell the defendant what he already knows" creates the implication the defendant has information which he refused to share with the jury, and again by

20

implication, the jury should infer guilt. We conclude the argument is without merit.

21

      The appropriate test to determine whether *Griffin* error occurred is the reasonable likelihood standard. (*People v. Clair* (1992) 2 Cal.4th 629, 662.) The test focuses on

22

whether there is a reasonable likelihood the jury misconstrued or misapplied the words in violation of the Constitution. (*Id.* at p. 663.)

23

      Here, there was no reasonable likelihood the jury misconstrued the prosecutor's

24

statements. Again, we view the prosecutor's comments in the context of the whole statement, as set forth in the record. The prosecutor stated: "Mr. Palma, with his friends,

25

went over there with an intent to assault, with weapons, with a gun. And he knew it. He knows it now. He knows why he went there. And you also know it based on the

26

evidence." The inference is that Palma, at the time of the incident, knew what he was doing, and Palma cannot *now* change what he intended *then*. Even though the prosecutor

27

is using the present tense of "know," he is still referring to what Palma knew in the past.

28

      The prosecutor continued with this theme: "Come back and tell the defendant was he already knows. Come back and tell him that he's guilty of every one of these charges." Again, the inference is Palma cannot change now what he knew then.

It is also important to note that during closing argument defense counsel paid close attention to the subjective intent element, stating: "What was in [the defendant's] mind is what they have to prove, what they must prove for any count of conviction." "[A] prosecutor is justified in making comments in rebuttal, perhaps otherwise improper, which are fairly responsive to argument of defense counsel that are based on the record." (*People v. Hill* (1967) 66 Cal.2d 536, 560.) Here, the prosecutor responded with the inference that evidence proved what was in his mind then, and it is still in his mind now.

Palma asks us to believe the prosecutor's comments relegated the jury to thinking about Palma only in the present tense and then construing his present failure to respond against him despite being instructed by the court otherwise. [footnote omitted.] This argument is unconvincing. We thus conclude there was no *Griffin* error.

(Lodgment No. 6 at 16-18.)

"The Due Process Clause prohibits a prosecutor from commenting on a defendant's decision not to testify." *Hovey v. Ayers*, 458 F.3d 892, 912 (9th Cir. 2006), citing *Griffin v. California*, 380 U.S. 609, 615 (1965). Prosecutors can commit *Griffin* error in two ways: by directly commenting on a defendant's failure to testify and by indirectly doing so. The Ninth Circuit has further defined this standard as follows:

[¶] While a direct comment about the defendant's failure to testify always violates *Griffin*, a prosecutor's indirect comment violates *Griffin* only "if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify."

*Id.*, citing *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987).

In Palma's case the prosecutor stated the following during his rebuttal argument:

[THE PROSECUTOR]: [¶] Mr. Palma, with his friends, went over there with an intent to assault, with weapons, with a gun. *And he knew it. He knows it now. He knows why he went there.* And you know it based on the evidence.

*What I'm going to ask for you to do is to come back and to tell him what he already knows.* Don't be fooled by what has been said to you. Don't be fooled by the dispatch tapes. Don't be fooled by the fact that it was a one on one challenge. Don't be fooled by any of that. *Come back and tell the defendant what he already knows.* Come back and tell him that he's guilty of every one of these charges.

(Lodgment No. 2, vol. 7 at 1223) (emphasis added).

The state court found that the prosecutor was commenting on the fact that Palma knew what he was doing then and cannot now change that intent. (Lodgment No. 6 at 17.) This Court agrees the prosecutor's comment was intended, in part, to convey that Palma went to Nevarez's house with the intent to assault, and that he knew that was his intent at the time. This is simply a comment on the state

-17-

11cv1684

of the evidence of Palma's intent at the time of the crime.  The prosecutor's comments about Palma's

*current* knowledge of his intent at the time of the shooting, however, walks a much closer line to *Griffin*.

The prosecutor argued that Palma "knows it now[,] [h]e knows why he went there," which appears to

be a reference to Palma's current knowledge about his intent at the time of the shooting.  Thus, it could

be interpreted as an indirect comment on Palma's failure to explain his intent at the time of the shooting

because Palma is the only person who could tell the jury what his intent was.

       Indeed, the prosecutor's comments in this case are similar to the prosecutor's comments in

*Hovey*.  Hovey was accused of kidnapping and killing a young girl.  Evidence presented at trial included

testimony from two doctors, whose expert opinion was that the victim's wounds could have been caused

by a knife.  *Hovey*, 458 F.3d at 899.  Two jailhouse informants also testified Hovey told them he had

a knife with him when he kidnapped the victim and that he used the knife to kill her.  *Id.*  During closing

argument, the prosecutor told the jury Hovey had "never said anything to you about why, why he did

these things," and that Hovey "said he used a knife . . . [and had] never told you anything different."

*Id.* at 912.  The Ninth Circuit concluded these were indirect comments on Hovey's failure to testify:

> By focusing on Hovey's failure to explain his actions or to contradict the informant's testimony, the prosecutor's indication that Hovey "never said anything . . . about why . . . he did these things" and that Hovey "never told [the jury] anything different" called attention to Hovey's decision against taking the stand in his own defense.  The prosecutor's statement that "[t]here's nothing different" naturally and necessarily implicates Hovey's decision not to testify, as Hovey is the only person who could definitively answer the question of whether he used a knife.  *See id.* at 810 ("Courts have distinguished between those cases in which the defendant is the sole witness who could possibly offer evidence on a particular issue, and those cases in which the information is available from other defense witnesses as well."); *see also Williams v. Lane*, 826 F.2d 654, 665 (7th Cir. 1987) ("Prosecutorial references to 'uncontradicted' testimony are more readily deemed indirect references to the defendant's failure to testify in cases where it is 'highly unlikely that at least a portion of the testimony could have been contradicted by anyone other than the defendant.'" (quoting *United States v. Buege*, 578 F.2d 187, 189 (7th Cir. 1978)).

*Id.*

       Even if a court finds that a prosecutor commented, either directly or indirectly, on a petitioner's

decision not to testify, however, reversal of a conviction is only required if: "(1) the commentary is

extensive; (2) an inference of guilt from silence is stressed to the jury as a basis for the conviction; and

(3) where there is evidence that could have supported acquittal."  *Jeffries v. Blodgett*, 5 Cal. 3d 1180,

1192 (9th Cir. 1993), citing *Lincoln*, 807 F.2d at 809.  Here, as in *Hovey*, any *Griffin* error was harmless.

The prosecutor's statements were very minimal and brief in the context of closing arguments, consisting of four lines in an argument that spanned forty-five pages. (*See* Lodgment No. 2, vo. 7 at 1150-77, 1205-

23.)  The prosecutor did not stress to the jury they should find Palma guilty of the charges specifically because he did not testify.  Rather, he suggested, in rebuttal to defense counsel's argument that the prosecution had failed to prove what was inside Palma's mind, that Palma knew then and knows now that his intent at the time of the crime made him guilty of the charges.  (*Id.* at 1178.)  The evidence against Palma, however, was hardly overwhelming and was based entirely on circumstantial evidence and expert testimony as to whether Palma knew a fellow gang member brought a gun to the confrontation with Nevarez.  Nevertheless, on habeas review, Palma must establish that any *Griffin* error had a "substantial and injurious effect on the verdict." *Beardslee v. Woodford*, 358 F.3d 560, 588 (9th Cir. 2004) citing *Brecht*, 507 U.S. at 637.  Given this high standard on federal habeas review, it is not conceivable to this Court that the jury would have come to a different conclusion had the prosecutor not made the comments Palma complains of.

For all the foregoing reasons, Palma has not established the state court's denial of this claim was contrary to, or an unreasonable application of, clearly established Supreme Court law.  *Williams*, 529 U.S. at 412-13.  Accordingly, he is not entitled to relief as to this claim.

## IV.   **CONCLUSION**

The Court has considered the Petition, the Answer and Memorandum of Points and Authorities in Support of the Petition, the Traverse, as well as all the Lodgments and Exhibits submitted by the parties.  For the reasons outlined above, the Court **DENIES** the Petition for Writ of Habeas Corpus.

**IT IS SO ORDERED.**

DATED: March 28, 2012

Peter C. Lewis
U.S. Magistrate Judge
United States District Court

-19-

11cv1684